UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SAMUEL W. DRINKARD,

              Petitioner,

-vs-                                      Case No. 8:08-cv-2436-T-33EAJ

SECRETARY, DEPT. OF CORRECTIONS,

              Respondent.
_____/

## **ORDER**

This cause is before the Court on Petitioner Samuel Drinkard's pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction and sentence entered by the Twelfth Judicial Circuit for Sarasota County, Florida. A review of the record demonstrates that, for the following reasons, Drinkard's petition must be **denied.**

PROCEDURAL HISTORY

Drinkard was charged in a six-count amended information in Case No. 04-CF-13038 with the offenses of 1) attempted murder in the second degree of a law enforcement officer with a firearm; 2 and 3) two counts of aggravated battery on law enforcement officers; 4) depriving an officer of means of protection/communication; 5) resisting arrest with violence; and, 6) robbery (firearm or deadly weapon) alleged to have occurred in Sarasota County on or about August 13, 2004. (Ex. 001) After trial on February 1, 2005, the jury found Drinkard guilty on all counts. (Ex. 002). The state trial court sentenced Drinkard to life in prison. (Ex. 003)

Drinkard filed a timely direct appeal, raising two issues:

1. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE A BULLET FRAGMENT INTO EVIDENCE WHEN THERE WAS NO PROOF THE BULLET FRAGMENT WAS LINKED TO THIS INCIDENT.

2. WHETHER THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO LIFE IMPRISONMENT FOR ROBBERY AS RECLASSIFIED FOR CARRYING A FIREARM WHEN THE INFORMATION DID NOT CHARGE APPELLANT CARRIED A FIREARM.[1]

On June 3, 2005, Drinkard filed a Rule 3.800(b)(2) motion to correct sentencing error during appeal raising the same sentencing issue that he raised in Issue Two of his initial appellate brief. (Ex. 006) On January 31, 2006, the state trial court denied the motion. (Ex. 007) On July 26, 2006, the state district court of appeal affirmed Drinkard's conviction and sentence. *Drinkard v. State*, 935 So. 2d 6 (Fla. 2d DCA 2006)[table].

On October 15, 2006, Drinkard filed a Rule 3.850 motion for postconviction relief raising nine grounds:

> 1. Defendant was denied effective assistance of counsel by counsel's failure to pursue an after-thought theory of defense to the crime of robbery with a firearm.
>
> 2. Defendant was denied the effective assistance of counsel by counsel's failure to investigate and call witnesses.
>
> 3. Defendant was denied effective assistance of counsel by counsel's failure to pursue a voluntary intoxication defense to the specific intent crime of robbery with a firearm.
>
> 4. Defendant was denied effective assistance of counsel by counsel's failure to investigate the Defendant's family history and mental health issues.
>
> 5. Defendant was denied effective assistance of counsel by counsel's failure to move for a pre-sentence investigation report.
>
> 6. Defendant was denied effective assistance of counsel by counsel's failure to offer testimony of a psychiatrist.

---

[1] See Respondent's Exhibits 004 and 005 for the appellate briefs.

> 7. Defendant was denied effective assistance of counsel by counsel's failure to move to dismiss the charge of attempted second degree murder of a law enforcement officer.
>
> 8. The trial court erred in allowing the State to introduce a bullet fragment into evidence with no proof the bullet was linked to the crime. Counsel was ineffective in failing to introduce evidence of the gun shot residue test.
>
> 9. The trial court erred in sentencing Defendant to life in prison for the robbery with a firearm.

(Ex. 008)

The state trial court summarily denied Grounds 1 to 5 and 7 to 9, and ordered the State to respond to Ground 6. (Ex. 009) The state trial court subsequently entered an amended order. (Ex. 010) The state trial court granted a limited evidentiary hearing on Ground 6. (Ex. 011) After the evidentiary hearing, the state trial court denied relief. (Ex. 012)

Drinkard appealed the denial of his Rule 3.850 motion. On March 28, 2008, the state district court of appeal per curiam affirmed the denial of postconviction relief. *Drinkard v. State*, 982 So. 2d 694 (Fla. 2d DCA 2008)[table] (Ex. 013) The mandate issued June 6, 2008. (Ex. 014)

On July 31, 2008, Drinkard filed a state habeas corpus petition alleging that his appellate attorney was ineffective for failing to raise the claim that his arrest was illegal. Drinkard claimed that appellate counsel should have raised the claim that the deputy sheriff office did not have probable cause to call the sheriff's communications center and thus discover that there was an outstanding warrant for his arrest. The deputy sheriff's telephone call was precipitated by Drinkard's sister's telephoning the sheriff's office to determine whether Drinkard was safe during and after hurricane Charlie. On August 12, 2008, the state district court of appeal denied the state petition for writ of habeas corpus. (*See* Exs. A and B filed September 25, 2009).

Drinkard timely signed and filed the instant 28 U.S.C. § 2254 petition on November 11, 2008.

## STANDARDS OF REVIEW

### The AEDPA Standard

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

### Standard for Procedural Default/Procedural Bar

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell,* 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Snowden v. Singletary*, 135 F.3d at 735 ("Exhaustion of state remedies requires that the state prisoner fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).

Exhaustion of state court remedies generally requires a petitioner to pursue discretionary appellate review. "'[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process, including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003)(citing *O'Sullivan*, 526 U.S. at 845). This is required even if the state Supreme Court rarely grants such petitions and usually answers only questions of broad significance. *O'Sullivan*, 526 U.S. at 845-46.

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones,* 256 F.3d 1135, 1138 (11th Cir. 2001). Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either

the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson v. Campbell*, 353 F.3d at 891(quoting *Judd v. Haley*, 250 F.3d at 1313).

As stated above, a procedural default will only be excused in two narrow circumstances. First, petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson v. Campbell*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "'prejudice," Drinkard must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis,* 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady,* 456 U.S. 152, 170 (1982). Drinkard must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell,* 353 F.3d at 892.

Second, a petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if such review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); , 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Campbell*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual"

innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (2001) (citing *Calderon v. Thompson,* 523 U.S. 538, 559 (1998); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986) (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, " '[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining that "[g]iven the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

The *Schlup* Court stated that the petitioner must show constitutional error coupled with "new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. *Schlup* 513 U.S. at 324. This fundamental miscarriage of justice exception is not available unless "the petitioner shows, as a factual matter, that he did not commit the crime of conviction." *Ward v. Cain*, 53 F. 3d 106, 108 (5th Cir. 1995) (denying certificate of probable cause)(footnote omitted).

"The Supreme Court fairly recently made clear that an ineffective assistance of counsel claim being used for cause to excuse a procedural default of another claim is not itself excepted from the doctrine of procedural default." *Henderson v. Campbell*, 353 F.3d at 896. In *Edwards v. Carpenter*, 529 U.S. 446, 451- 52 (2000), a habeas petitioner argued ineffective assistance of counsel as cause for his procedural default of other constitutional claims in his § 2254 petition. But, he had never raised this ineffective assistance claim in state court, and he was now procedurally barred from raising the claim. The Supreme Court held that unless the

petitioner could establish cause and prejudice to excuse his procedural default of his ineffective assistance claim, he was barred from using it as a basis for cause to excuse his procedural default of the underlying claim. *Id.* at 451-53.

## DISCUSSION

### GROUND ONE

Drinkard claims that he was convicted based on evidence obtained pursuant to an illegal arrest. Drinkard alleges that police had no probable cause to do a record check when his sister called concerning his welfare.

The facts leading up to the charges in this case began when Drinkard's sister called the sheriff's office communications center because she was worried about her brother due to the impeding hurricane Charlie and related evacuation orders. When the deputies visited Drinkard at his home, he seem concerned, nervous, and anxious. The deputy "ran a name check" and determined that there were outstanding warrants for Drinkard.

After the record check turned up the warrants, the deputy told Drinkard that he was under arrest. Drinkard ran a short distance, took the deputy's pistol and demanded his radio, which the deputy gave him. (See Exhibit 4, Initial brief on direct appeal statement of the case and facts). Subsequently, the deputies arrested Drinkard.

This episode began as a consensual encounter between Drinkard and a deputy. Drinkard's conduct raised the deputy's suspicion who then did a name check. No attempt to detain Drinkard occurred until the deputy determined that there were outstanding warrants.

Drinkard seems to be saying that law requires that the police have probable cause prior to doing a warrant check on an individual. However, that is not the case. In *Tercero v. State*, 963 So. 2d 878 (Fla. 4th DCA 2007), the court stated:

More recently, the supreme court applied the three-part test in *Golphin v. State*, 945 So.2d 1174 (Fla.2006), petition for cert. filed, No. 06-1251, 75 USLW 3512 (Mar. 9, 2007).² There, the court determined that drug evidence discovered during the search of the defendant incident to an arrest on an outstanding warrant did not have to be suppressed, regardless of whether the defendant's encounter with police during the traffic stop constituted an unlawful seizure.FN3 Noting that the officer had an indisputable obligation to enforce the arrest warrant, the court determined that "the search was incident to the arrest, not to the preceding encounter between Golphin and [the officer]." *Id.* at 1192. The court stated:

> **FN3. In fact, the supreme court did not find that Golphin was unlawfully seized. It found that, based on the totality of the circumstances, Golphin's encounter with the police was consensual, and that the consensual nature of the encounter did not change into a seizure simply because the police retained Golphin's identification during a computer check for warrants. See 945 So.2d at 1193.**

We further note that the United States Supreme Court has held that searches incident to a lawful arrest are constitutionally permissible and reasonable under the Fourth Amendment. *See United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) ("It is the fact of the lawful arrest which establishes the authority to search, and we hold that in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."). *Id*

*Tercero v. State*, 963 So.2d at 881-882 (emphasis added).

In the instant case, the arrest was the ultimate result of an inquiry from Drinkard's sister, not from a traffic stop. There was no search or items to be suppressed. Certainly if, as in *Golphin*, the police can run a name check during a consensual encounter and can retain a drivers license to effectuate it, what occurred in Drinkard's case was proper and did not deny Drinkard any constitutional right nor cause his arrest be be illegal.

Ground One does not warrant relief.

---

² Golphin's petition for writ of certiorari was denied October 1, 2007. *Golphin v. Florida,* 128 S.Ct. 40 (2007).

GROUND TWO

Drinkard claims his life sentence is constitutionally illegal under the Eighth Amendment. He asserts that his sentence was improper because the information did not allege that he carried a firearm during the commission of the felony. Drinkard raised this claim on direct appeal and the second district court of appeal found that the claim had no merit.

Drinkard never raised the claim as a federal constitutional violation, but rather as a misinterpretation of the statute under which he was charged. Therefore, the claim is procedurally barred in this Court and Drinkard has not shown cause and prejudice to overcome the procedural bar.

Regardless, even if the claim were not procedurally barred, the claim has no merit. The Florida Supreme Court dealt with this issue in 2004, in a case involving of whether an automobile could be deemed a deadly weapon under the robbery statute. In *State v. Burris*, 875 So.2d 408 (Fla. 2004) the court reasoned:

> We agree with the trial court that the intended meaning of the word "carry," as used in section 812.13(2)(a), must be sought by use of logic and common sense. The verb "carry" has many meanings. One of the principal meanings ascribed to it is "to wear, hold, or have around one," in the sense of possessing. The Random House Dictionary of the English Language 319 (2d ed.1987) (unabridged). We are of the opinion that ascribing such a meaning to "carry," as used in section 812.13(2)(a), is perfectly consistent with the obvious intent behind the statutory provision. *See, e.g., State v. Webb*, 398 So.2d 820, 824 (Fla.1981) ("legislative intent is the polestar by which the court[s] must be guided" in statutory construction, even when at odds with "the strict letter of the statute"). It seems to us that the clear intent behind section 812.13(2)(a) is to deter the commission of robberies by persons possessing deadly weapons, and thereby to reduce the likelihood of death or serious injury to victims and bystanders. *See, e.g., State v. Baker*, 452 So.2d 927 (Fla.1984) (punishment is enhanced under statute for possession of deadly weapon during commission of offense; use of weapon is not necessary).

*Burris,* 875 So.2d at 410-411.

The crux of Drinkard's claim on direct appeal and in the present petition is that the statute reads in terms of "carry" while the Information alleged he "possessed" a firearm. (See Exhibit 4, Issue II in direct appeal brief) As the Florida Supreme Court noted in *Burris*, this is a distinction without a difference. Drinkard's sentence was properly enhanced for possessing a firearm during the robbery of which he was convicted.

Ground Two does not warrant relief.

### GROUND THREE

Drinkard concedes that Ground Three is procedurally barred. (See Drinkard's reply, Doc. No. 15, p. 5). Drinkard has not shown cause and prejudice to overcome the procedural bar and has not shown that manifest injustice will occur if this Court does not reach the merits of Ground Three.

Ground Three does not warrant relief.

### GROUND FOUR

In his reply, Drinkard alleges that Ground Four "hinges on the probable cause issue" and begins a list of the 9 claims raised in Drinkard's Rule 3.850 motion. Ground Four does not warrant relief because Drinkard does not raise any specific claim.

### GROUND FIVE

Drinkard essentially re-alleges the claims he raised in his Rule 3.850 motion for postconviction relief. The state trial court denied addressed each claims in an order that reads:

> AMENDED ORDER DENYING IN PART MOTION FOR POST-CONVICTION RELIEF AND ORDER DIRECTING STATE ATTORNEY TO FILE WRITTEN RESPONSE ON LIMITED ISSUE
>
> This matter is before the court on the Defendant's pro se Motion for Post-Conviction Relief (the "Motion") and Memorandum of Law filed on October 16, 2006 pursuant to Fla. R. Crim. P. 3.850. The court has carefully considered

the motion, memorandum, reviewed the court file, and is otherwise duly advised in the premises.

The Defendant was convicted, after a jury verdict, of Attempted Murder in the Second Degree of a Law Enforcement Officer with a Firearm, two counts of Aggravated Assault with a Firearm on a Law Enforcement Officer, Resisting Arrest with Violence and Robbery with a Firearm or Deadly Weapon and he was sentenced to life in the Department of Corrections on the robbery charge, thirty years on the Attempted Murder charge, fifteen years on the Aggravated Assault counts and five years on the Resisting Arrest charge. The court imposed a twenty year minimum mandatory on the Attempted Murder count, three year minimum mandatory sentences on the Aggravated Assault counts and a ten year minimum mandatory on the Robbery count. The court's judgment was affirmed on direct appeal.

The Defendant raises a total of nine claims in his Motion for Post-Conviction Relief. The Defendant's claims and the court's findings with respect to those claims are as follows:

1. The Defendant was denied the effective assistance of counsel by counsel's failure to pursue an after-thought theory of defense to the crime of robbery with a firearm.

The Defendant contends that at the time of the crime, he was experiencing extreme emotional problems as a result of his wife having left him and his use of cocaine and alcohol for 72 hours prior to the incident. The Defendant contends that at the time of the incident, he did not know if he had committed any crimes during his alcohol and drug binge and that he was only seeking to flee the area and had no intent to rob the victim of his vehicle. The Defendant contends counsel should have introduced this evidence to present an "after-thought" defense to the robbery charge.

The Defendant's Motion is denied. First, the Defendant's Motion is primarily facially insufficient because the Defendant does not allege with any specificity what evidence his attorney failed to present that would have supported his "after-thought" defense to the robbery charge. "In order for a motion to be facially sufficient, the defendant must allege specific legal and factual grounds that demonstrate a cognizable claim for relief." *Davis v. State*, 875 So. 2d 359 (Fla. 2003). *See also Kennedy v. State*, 547 So. 2d 912 (Fla. 1989) (holding that the Defendant may not simply file a motion for postconviction relief containing conclusory allegations that his or her trial counsel was ineffective and then expect to receive an evidentiary hearing). Further, the Defendant would not have been able to introduce evidence of his voluntary intoxication because the defense of voluntary intoxication would not have been available to him at trial. See § 775.051, Fla. Stat. (2004). (See attached Amended Information). Finally, the

-12-

Defendant testified to his lack of intent in taking the victim's car and he denied using a firearm to take the victim's car. (See attached Tr. 299-330).

2. The Defendant was denied the effective assistance of counsel by counsel's failure to investigate and call a witness.

The Defendant contends that counsel should have called a Rich Tabor, who the Defendant contends could have testified that the Defendant did not point the gun at the victim of the robbery and did not chase the victim with a gun. The Defendant also claims the witness could have testified that the Defendant was in the process of leaving Florida and that this testimony would have supported the Defendant's "after-thought" defense.

The Defendant's Motion is denied. Based upon the transcript of the Defendant's testimony attached to ground one above, any failure by counsel to present the testimony of Mr. Tabor was a failure to present cumulative testimony, which does not constitute ineffective assistance of counsel. *See Coleman v. State,* 718 So. 2d 827, 829 (Fla. 4th DCA 1998).

3. The Defendant was denied the effective assistance of counsel by counsel's failure to pursue a voluntary intoxication defense to the specific intent crime of robbery with a firearm.

The Defendant cites his allegations in ground one concerning his drug and alcohol use prior to the crime and claims that due to that he lacked the required specific intent to commit the robbery.

The Defendant's Motion is denied for the reasons given in this order under ground one above.

4. The Defendant was denied the effective assistance of counsel by counsel's failure to investigate the Defendant's family history and mental health issues. The Defendant claims that he was diagnosed with severe depression at an early age and that medical records could have been subpoenaed that showed he has taken psychotropic drugs in the past for depression. The Defendant also points to his broken family and alcoholic parents and claims that his sister could have testified to those facts. The Defendant claims that this testimony and evidence could have raised doubts about his state of mind at the time of the crime.

The Defendant's Motion is denied. The testimony regarding the Defendant's depression and use of psychotropic drugs would not have been admissible because the Defendant admits he was not insane at the time of the crime. Further, the testimony regarding his parents and his family history would

not have been admissible and the Defendant does not explain how it would have been admissible at trial.

5. The Defendant was denied the effective assistance of counsel by counsel's failure to move for a presentence investigation report.

The Defendant contends that counsel failed to request a presentence investigation report prior to sentencing and that if one had been prepared a number of mitigating factors would have been disclosed in the report.

The Defendant's Motion is denied. As stated in *Washington v. State*, 397 So. 2d 285, 287 (Fla. 1981), "[f]ailure to request a pre-sentence report does not establish prejudice since the results of such an investigation would be pure speculation. In any event, such a report is discretionary with the trial court." *Id.*

6. The Defendant was denied the effective assistance of counsel by counsel's failure to offer testimony of a psychiatrist.

The Defendant contends that counsel failed to introduce testimony of a psychiatrist that was appointed prior to trial to assist the defense. The Defendant contends that the psychiatrist's testimony could have supported his theory of lack of intent. The Defendant points to the psychiatrist's findings of severe personality disorder, emotional perceptive disorder and self-destructive behavior.

The State Attorney is directed to file a written response as to whether the Defendant is entitled to an evidentiary hearing on his claim for postconviction relief. Any portions of the record required to substantiate the State's response shall be attached to the response.

7. The Defendant was denied the effective assistance of counsel by counsel's failure to move to dismiss the charge of attempted second degree murder of a law enforcement officer. The Defendant contends that the first count of the information charging attempted murder in the second degree of a law enforcement officer was insufficient because it failed to include elements of the charge of first degree premeditated murder.

The Defendant's Motion is denied. As information attached to this order under ground one reflects, the Defendant's claim is without merit as the information did not charge attempted first degree murder of the a law enforcement officer as it did in the cases cited by the Defendant, but rather the information properly charged attempted second degree murder of a law enforcement officer.

8. The trial court erred in allowing the State to introduce a bullet fragment into evidence when no proof that the bullet was linked to the crime and counsel was ineffective in failing to introduce evidence of a gun shot residue test.

The Defendant first contends that the trial court erroneously allowed the State to introduce evidence of a bullet fragment that was found two weeks after the crime with no proof that the bullet was related to the crime. The Defendant also faults counsel for failing to point out that no hand-gun residue test was performed on the Defendant to prove the causal link needed to allow the bullet fragment evidence into trial.

The Defendant's Motion is denied. First, with respect to the issue regarding the court's ruling on the admissibility of the bullet fragment, the Defendant's claim is without merit as he raises an issue that could or should be raised on direct appeal. See Fla. R. Crim. P. 3.850(c).

With respect to the Defendant's claim regarding counsel's alleged failure to raise an issue regarding a hand-gun residue test, it is clear that counsel argued a motion in limine at the beginning of the trial and the court overruled the objection and the evidence was admitted at trial. (See attached Tr. 112-116, 230-235). When the crime scene technician testified, she did not testify that the bullet fragment came from the Defendant's gun. (See attached Tr. 280-81). From the testimony of the Defendant attached to this order under ground one above, there is no question that the Defendant fired on the deputy during the crime, therefore, the Defendant has failed to show how evidence of a gun residue test would have resulted in a different outcome at trial.

9. The trial court erred in sentencing the Defendant to life in prison for the robbery with firearm.

The Defendant claims that the court's sentence of life imprisonment for the robbery with firearm charge was erroneous because the information did not charge that the Defendant carried a firearm, but only possessed a firearm.

The Defendant's Motion is denied. The Defendant's claim is successive of counsel's claim in the motion to correct sentencing error filed during the Defendant's direct appeal that was denied and affirmed on appeal. (See attached Motion to Correct Sentencing Error During Appeal and Order Denying Motion to Correct Sentencing Error During Appeal (without attachments)). As a result, the Defendant's claim is procedurally barred.

Therefore, it is ORDERED and ADJUDGED:

> 1. The Motion, file and record establish that the Defendant is entitled to no relief on grounds 1 through 5 and 7 through 9, and the Defendant's Motion for Post-Conviction Relief is denied with respect to those grounds.
>
> 2. The Office of the State Attorney is directed to file a written response to whether the Defendant is entitled to an evidentiary hearing with respect to ground 6 of the Defendant's Motion by January 17, 2007, with attachments from the record to support its response.
>
> 3. Although the Defendant has a right to appeal the portions of this order denying relief, the thirty day period shall be tolled until after the State's response has been filed and the court has court has made a final disposition of the Defendant's Motion.

(Ex. 010)[3]

After the State filed its answer, the state trial court scheduled an evidentiary hearing, which was held on February 27, 2007. After the evidentiary hearing, the state trial court denied the Rule 3.850 motion in an order that reads:

> This matter is before the court on the Defendant's Motion for Post-Conviction Relief (the "Motion") filed pursuant to Fla. R. Crim. P. 3.850. The court held an evidentiary hearing on one claim in the Defendant's Motion on February 27, 2007. The court has carefully considered the motion, testimony at the hearing, argument of counsel, reviewed the court file, and is otherwise duly advised in the premises.
>
> The Defendant's attorney, Steven Watson, testified at the evidentiary hearing. Mr. Watson, a very experienced attorney with the Public Defender's office, testified that he represented the Defendant at his trial on the instant charges, which included attempted murder in the second degree of a law enforcement officer, aggravated assault and robbery with a firearm. Mr. Watson testified that the State had a very strong case and that the primary defense against the attempted murder charge was lack of intent and that the robbery never actually occurred. Mr. Watson testified he had the Defendant evaluated by Dr. Eddy Regnier for competency and insanity, but once the report was prepared and reviewed by Mr. Watson and his client, it was determined that it was not useful or admissible at trial. Mr. Watson testified that the Defendant testified at

---

[3] The original (Ex. 09) and amended orders denying relief in part appear to be identical except that the amended order includes citations to attachments.

-16-

trial and he told the jury about the break-up of his marriage, his depression and his lack of intent in shooting at the deputies.

Mr. Drinkard testified at the hearing. Mr. Drinkard testified he wanted Mr. Watson to use the report and he thought he was going to call Dr. Regnier at trial. Mr. Drinkard testified he believed the report would have supported his defense, lack of intent, and the failure to present the testimony prejudiced him.

The Defendant's Motion is denied. Based upon the transcript of the Defendant's trial testimony and the report that were both received in evidence at the hearing, it is clear that any failure by Mr. Watson to have used the report or testimony at trial did not prejudice the Defendant such that the outcome of trial would have been different. *See Strickland v. Washington*, 466 U.S. 668 (1984). Additionally, Mr. Watson's conclusion that the testimony was inadmissible was the correct one under the current state of Florida law. *See Chestnut v. State*, 538 So. 2d 820 (Fla. 1989)(holding that evidence of abnormal mental condition not constituting legal insanity is inadmissible for proving either that accused could not or did not entertain the specific intent or state of mind essential to proof of the offense). Finally, the Defendant's own testimony at that established his defense of lack of intent and any failure to present additional supporting testimony on that ground would not have established the prejudice required for postconviction relief.

(Ex. 12 [Order] and Ex. 17 [Transcript of Evidentiary Hearing])

Drinkard has failed to show that the state courts' rejection of Ground Five relied on erroneous facts, or that the state courts applied established federal law in a manner that was contrary to or was objectively unreasonable in light of United States Supreme Court precedent. Therefore, no habeas relief is warranted on Ground Five.

## GROUND SIX

Drinkard claims he has discovered new evidence. He claims that he has discovered that his trial counsel was ineffective because he neglected to file with the Twelfth Judicial Circuit the judicial acts to be reviewed. Drinkard fails to state how he was prejudiced by the alleged failure of his trial counsel to do so. A review of the record on appeal indicates the state district court of appeal obtained the entire trial transcript and that all of the relevant record documents were included in the record on appeal. Appellate counsel was not precluded from raising any relevant

issue, any preserved claim, or any fundamental error claim on appeal. The notice of appeal filed by Drinkard's counsel stated "The nature of the order is a final Judgment and sentence which resulted from the trial court's prejudicial errors in the proceedings below." (Ex. 015)

Drinkard fails to show how trial counsel's failing to file "the judicial acts to be reviewed" prejudiced him. He simply states that because counsel failed to do so, he deserves a new trial. Drinkard hard failed to meet his burden under *Strickland* and Ground Six does not warrant relief.

GROUND SEVEN

Drinkard alleges the amended information had "no" checked in the box beside the 10-20-life indication regarding his sentence. Therefore, according to Drinkard, he was not expecting a life sentence and was misled. Drinkard neglects to mention the fact one of the counts of the amended information was attempted murder of a law enforcement officer (LEO) with the discharge of a firearm. This count carried a sentence up to life in prison. (See Ex. 001) As the police report of the incident shows, though Petitioner fired at an officer, he missed. (Ex. 016) Therefore, the life provision of the 10-20-Life Fla. Stat. § 775.087 does not apply in this case, because no great bodily injury occurred.

Drinkard claims, as a result of the misleading statement in the information, he was denied the opportunity to prepare a plausible defense. Based on the face of the information, Drinkard knew he was facing an aggregate of 100 years if sentenced consecutively, even if the attempted second degree murder of a LEO was counted as a first degree felony. Drinkard does not state what he would have done differently if the Information had been marked differently. Drinkard has not shown how he was prejudiced by the Court's mark on the Information. The only claim Drinkard makes is the conclusory contention that he was misled. The record belies

this contention. The very Information he claims is misleading sets forth the sentences applicable to each separate crime charged. Ground Seven does not warrant relief.

Accordingly, the Court orders:

That Drinkard's petition is denied, with prejudice. The Clerk is directed to enter judgment against Drinkard and to close this case.

**CERTIFICATE OF APPEALABILITY AND
LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on October 5, 2009.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Counsel of Record
Samuel Drinkard